IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Leonard Stanfield,  #235306, | ) | Civil Action No.:2:16-cv-01066-CMC-MGB |
| | ) | |
| Petitioner, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| v. | ) | **OF MAGISTRATE JUDGE** |
| | ) | |
| C. Reynolds, *Warden, Lee Correctional Institution*, | ) | |
| | ) | |
| | ) | |
| Respondent. | ) | |

The Petitioner, a state prisoner, seeks habeas relief pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Respondent's Motion for Summary Judgment. (Dkt. No. 14; *see also* Dkt. No. 15.)

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner filed the instant action on March 31, 2016. (*See* Dkt. No. 1 at 14 of 14.) On August 17, 2016, Respondent filed a Motion for Summary Judgment. (Dkt. No. 14; *see also* Dkt. No. 15.) By order filed August 17, 2016, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 16.) On or about November 21, 2016, Petitioner filed his Response in Opposition to the Motion for Summary Judgment. (Dkt. No. 24.)

**PROCEDURAL HISTORY**

The Petitioner is currently confined within the South Carolina Department of Corrections ("SCDC") at Lee Correctional Institution. In October of 2003, the Colleton County Grand Jury indicted Petitioner for armed robbery, burglary in the first degree, kidnapping, and murder. (R. at 417-22, 403.) Petitioner was represented by David Matthews, Esquire. (*See* R. at 1.) Petitioner proceeded to a jury trial before the Honorable R. Ferrell Cothran, Jr. on May 23-24 of 2007. (R. at 1-307.) On May 24, 2007, the jury found Petitioner guilty of armed robbery, burglary in the first

1

degree, and kidnapping; the jury found Petitioner not guilty of murder. (*See* R. at 296, 417, 419, 421.) Judge Cothran sentenced Petitioner to thirty years on the conviction for burglary in the first degree and thirty years, concurrent, on the conviction for kidnapping. (R. at 305.) Judge Cothran also sentenced Petitioner to thirty years on the conviction for armed robbery; Judge Cothran indicated the sentence for armed robbery is to run consecutive to the sentence for burglary in the first degree but that upon the service of twelve years, the balance was to be suspended. (R. at 305-06.)

Petitioner appealed and was represented by Joseph L. Savitz, III, Esquire, of the South Carolina Commission on Indigent Defense. (*See* Dkt. No. 15-3.) On December 18, 2008, Petitioner filed a Final *Anders*[1] Brief of Appellant, wherein he raised the following issue: "The trial judge committed reversible error by failing to instruct the jury on the defense of alibi." (Dkt. No. 15-3 at 4 of 9.) Mr. Savitz also filed a petition to be relieved as counsel. (*Id*. at 7 of 9.)

In an unpublished opinion filed on October 26, 2009, the South Carolina Court of Appeals dismissed the appeal and granted counsel's motion to be relieved. (Dkt. No. 15-4.) The matter was remitted to the lower court on November 12, 2009. (Dkt. No. 15-5.)

On February 22, 2010, Petitioner filed an application for post-conviction relief ("PCR"). (R. at 343-51.) Therein, Petitioner contended he was in custody unlawfully due to ineffective assistance of trial counsel and ineffective assistance of appellate counsel. (*See* R. at 345.) On March 7, 2012, through J.D. Bryan, Esquire, Petitioner amended his application to add the following allegations:

Trial Counsel was ineffective in

(1) failing to move the Court to quash the indictment numbered 03-GS-15-734, which had been altered;

(2) not objecting to a jury charge on reasonable doubt that was burden-shifting[;]

(3) not objecting to the lack of probable cause for the arrest warrants, or calling witnesses to establish the lack of probable cause;

(4) not requesting an alibi charge or presenting witnesses to establish an alibi;

---

[1] *Anders v. California*, 386 U.S. 738 (1967).

(5) not objecting to the presence of the trial court in the jury room without the presence of either the defendant or counsel for the defendant;

(6) did not request a charge on the use of the co-defendants' guilty pleas[;]

(7) did not object to testimony of the use of drugs, which is testimony of the commission of other crimes, to the prejudice of the Defendant;

(8) did not object to unconstitutional burglary instruction[;]

(9) did not ask for mercy from the jury with regards to sentencing[; and]

(10) did not object when in opening statements, the Solicitor said, "You're not on a search for doubt. . . I'm going to ask for verdicts of guilty."

(R. at 352-53.)

On February 19, 2014, an evidentiary hearing was held before the Honorable James R. Barber, III. (R. at 360-401.) Petitioner was present and represented by William C. Bennett, Esquire. (*See* R. at 360.) In an amended order of dismissal filed on July 11, 2014, Judge Barber denied the application for post-conviction relief and dismissed the petition. (R. at 402-16.)

Petitioner appealed, and on March 4, 2015, through Attorney Tiffany L. Butler of the South Carolina Commission on Indigent Defense, he filed a Petition for Writ of Certiorari. (Dkt. No. 15-6.) Therein, Petitioner raised the following issue:

> Whether trial counsel erred by failing to object to testimony from Petitioner's co-defendant, Leonard Pinckney, that he and Petitioner "smoked a blunt" while discussing the robbery and Petitioner gave Pinckney a "bag of cocaine" before driving to Patrice Ford's apartment, where the testimony was not relevant and was unduly prejudicial to Petitioner?

(Dkt. No. 15-6 at 3 of 12.)

In an order dated September 3, 2015, the Supreme Court of South Carolina denied the petition for a writ of certiorari. (Dkt. No. 15-8.) The matter was remitted to the lower court on September 21, 2015. (Dkt. No. 15-9.)

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

3

**GROUND ONE**: Whether the Post Conviction Relief Court erred when the court "Ruled"–"This Court finds counsel was not deficient for failing to object to the trial judge entering the jury room and engaged in out-of-court Ex Parte admonitions with the jury. U.S.C.A. Const. Amend. 6.

**GROUND TWO**: Whether the Post Conviction Relief Court erred when the court "Ruled"–"This Court finds counsel was not ineffective for failing to "Object" to the Court's instruction on "reasonable doubt," U.S.C.A. Const. Amend. 6th.

(Dkt. No. 1-4 at 43, 77 of 124.)

## APPLICABLE LAW

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor.'" *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> 2. resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented at the
> State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

As noted above, Respondent seeks summary judgment in the instant case. (Dkt. No. 14; *see also* Dkt. No. 15.) Before turning to the merits of the individual grounds for relief, the undersigned will briefly review the facts of this case.

Patrice Ford testified at Petitioner's trial that on July 24, 2003, she was at her apartment with Tony Wilson; the two of them were in her bedroom, having dozed off while watching television. (R. at 42-44.) She testified that "all of a sudden . . . [they] heard two loud kicks at the door," and by the time she lifted her head up, two armed people were entering her bedroom. (R. at 44-45.) She testified the individuals made her get on the floor and made Tony get out of the bed; they demanded $50,000 from Tony. (R. at 45.) When Tony responded that he did not have the money, she and Tony were forced outside into Tony's vehicle; Tony was driving, she was in the back seat, and one of the assailants was in the passenger seat. (R. at 45-48.) Ms. Ford testified that once they got to Mable T. Willis Drive,

> They–he made Tony stop, made us get out the car, he walked Tony over by the edge
> of the road, and Tony went to grab for him, and that's when he made Tony get down
> on his knees and he shot him, and I dropped to my knees. I fell on the ground.

(R. at 48.) When asked if she recognized the voice of the assailant in the passenger seat, she said it sounded like Leonard Stanfield, the Petitioner. (R. at 50, 72-73.) She also testified that she recalled a conversation she had with Tamika Wilson on July 22, 2003, during which Tamika Wilson stated

that she was "going to rob somebody." (R. at 50.)[2] According to Ms. Ford, there was a relationship between Petitioner and Tamika Wilson. (R. at 72-73.)

Leonard Pinckney testified that on July 23, 2004, he and Petitioner met at Chase Lounge and that they discussed robbing Tony Wilson. (R. at 125-26.) According to Pinckney, he and Petitioner found out Wilson's location because Petitioner got a phone call from Tamika Wilson. (R. at 127.) Pinckney testified that both he and Petitioner each had a gun, and they went to the apartment; Pinckney said he kicked the door in. (R. at 128-29.) Pinckney further testified that he told the victims to get down and grabbed the money and keys in Tony's pants pocket. (R. at 130.) Pinckney stated that he handed the keys to Petitioner and then,

> I just sit around, and Leonard Stanfield, he left to go–assume to get the car. And while I was in there, I just stand and look at–something told me to leave, and I just left, pulled the phone cord out and left.

(R. at 130.) Pinckney testified that when he saw Petitioner later, Petitioner "said he had shot Mr. Wilson in the leg and had shot him again in the chest." (R. at 132-33.)

As noted above, the jury found Petitioner guilty of armed robbery, burglary in the first degree, and kidnapping; the jury found Petitioner not guilty of murder. (*See* R. at 296, 417, 419, 421.) Having reviewed the factual background of the case, the undersigned now turns to Petitioner's individual grounds for relief. For the reasons set forth herein, the undersigned recommends granting the Motion for Summary Judgment. (Dkt. No. 14.)

## A.    Procedural Default

Respondent contends that both Grounds One and Two are procedurally defaulted because while they were raised to and ruled upon by the PCR judge, they were not raised in the PCR appeal. (Dkt. No. 15 at 19 of 33.) The undersigned agrees and therefore recommends granting Respondent's Motion for Summary Judgment (Dkt. No. 14.)

---

[2]Tamika Wilson testified that when she had this conversation with Ms. Ford, they discussed robbing a particular individual, Tony Wilson, who was Tamika Wilson's uncle. (R. at 164-67.) Tamika Wilson further testified that her part in the robbery was calling Petitioner to give him the location of Tony Wilson. (R. at 164-65.)

Petitioner asserts in Ground One that the PCR court erred in ruling that trial counsel was not deficient for failing to object to the judge "entering the jury room and engag[ing] in out-of-court Ex Parte admonitions with the jury." (Dkt. No. 1-4 at 43 of 124.) He contends that counsel was ineffective in failing to object when the trial judge "'without' the presences of the petitioner, defense counsel, prosecution and a court reporter, entered the jury room and engaged in out of court Ex Parte admonitions with the jury." (*Id*.) He appears to contend that he was not required to show prejudice as to his claim set forth in Ground One. (*Id*. at 44 of 124.) He also states, "[T]he State 'cannot' meet its burden of showing that the court's error was harmless beyond a reasonable doubt; . . . because the petitioner, defense counsel, prosecution and court reporter were 'absent' during the ensuing out-of-court Ex Parte admonitions." (*Id*.)

In Ground Two, Petitioner asserts the PCR court erred in ruling that trial counsel was not ineffective for failing to object to the court's instruction on reasonable doubt. (Dkt. No. 1-4 at 77 of 124.) Specifically, Petitioner points to the following portions of the jury charge:

> Reasonable doubt may arise from the evidence which is in the case or the lack or absence of evidence in this case. The jury must determine whether or not reasonable doubt exists as to the guilt of this defendant.
> . . .
> It is your duty then by your joint deliberation to determine the truth of this case giving to this defendant the benefit of every reasonable doubt on each and every issue.
> Then–then to the facts which you determine to be true, you are to take and apply the law which has been given to you by this Court and arrive at your verdict, and your verdict should speak the truth.

(R. at 272, 289-90; *see also* Dkt. No. 1-4 at 77-78 of 124.) Petitioner contends counsel was ineffective in failing to object to the charge on reasonable doubt, stating,

> Petitioner argues a "Reasonable Doubt" charge is erroneous if it could cause a reasonable juror to interpret the "Truth" based upon a degree of evidence or the lack of evidence.
> As an abstract concept, "Truth" suggests determining whose version of the events is more likely true, the State's or the defendant's; thereby, intimates a preponderance of the evidence standard.
> Such an instruction would be error when used in the explanation of the concept of proof beyond a reasonable doubt.

7

> There is a reasonable likelihood the jury inferred the reference at the end of the charge to "truth" rendered as it was in the context of an admonition "not to give your honest belief" thus modifying (shifting) the reasonable doubt burden of proof.

(Dkt. No. 1-4 at 80 of 124.)

As noted above, Respondent contends that both Grounds One and Two are procedurally defaulted because while they were raised to and ruled upon by the PCR judge, they were not raised in the PCR appeal. (Dkt. No. 15 at 19 of 33.) The undersigned agrees. "Federal habeas review of a state prisoner's claims that are procedurally defaulted under independent and adequate state procedural rules is barred unless the prisoner can show cause for the default and demonstrate actual prejudice as a result of the alleged violation of federal law, or prove that failure to consider the claims will result in a fundamental miscarriage of justice." *Lawrence v. Branker*, 517 F.3d 700, 714 (4th Cir. 2008) (quoting *McCarver v. Lee*, 221 F.3d 583, 588 (4th Cir. 2000)). As the Fourth Circuit stated in *Longworth v. Ozmint*, 377 F.3d 437, 448 (4th Cir. 2004),

> [The] exhaustion requirement "reduces friction between the state and federal court systems by avoiding the unseem[liness] of a federal district court's overturning a state court conviction without the state courts having had an opportunity to correct the constitutional violation in the first instance." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (internal quotation marks and citation omitted). Thus, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process"-which includes "petitions for discretionary review when that review is part of the ordinary appellate review procedure in the State." *Id*. at 845, 847, 119 S.Ct. 1728. And this opportunity must be given by fairly presenting to the state court "both the operative facts and the controlling legal principles" associated with each claim. *Baker v. Corcoran*, 220 F.3d 276, 289 (4th Cir. 2000) (citing *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997) (internal quotation marks omitted)). In other words, the ground must "be presented face-up and squarely." *Mallory v. Smith*, 27 F.3d 991, 995 (4th Cir. 1994) (citation and internal quotation marks omitted).

*Longworth*, 377 F.3d at 448.

Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501

8

U.S. 722, 750 (1991); *see also Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, *Bousley v. United States*, 523 U.S. 614, 623 (1998); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995), or abandonment by counsel. *Maples v. Thomas*, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)).

Here, Petitioner only raised one claim in seeking appellate review of the denial of his application for post-conviction relief:

> Whether trial counsel erred by failing to object to testimony from Petitioner's co-defendant, Leonard Pinckney, that he and Petitioner "smoked a blunt" while discussing the robbery and Petitioner gave Pinckney a "bag of cocaine" before driving to Patrice Ford's apartment, where the testimony was not relevant and was unduly prejudicial to Petitioner?

(Dkt. No. 15-6 at 3 of 12.) Because Petitioner did not raise the claim set forth in Ground One or Ground Two to the appellate courts of South Carolina, the claim is defaulted. *See Longworth v. Ozmint*, 377 F.3d 437, 447-48 (4th Cir. 2004) (concluding that certain grounds are "procedurally defaulted as a result of [the petitioner's] failure to raise them in his petition for certiorari to the South Carolina Supreme Court for review of the State PCR Court's decision"); *see also Ward v. McLeod*, No. 3:01-0012-25BC, 2002 WL 31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.").

Petitioner cites *Holland v. Florida*, 560 U.S. 631, 130 S. Ct. 2549 (2010), stating that while he "does not rely on the ineffectiveness of his appointed appellate counsel as 'grounds for relief'[,] he does rely on counsel['s] ineffectiveness to establish 'cause' to excuse the procedural default."

(Dkt. No. 1-1 at 13 of 13.) As *Holland v. Florida* concerns equitable tolling, presumably Petitioner attempts to rely instead on *Martinez v. Ryan*, 132 S. Ct. 1309 (2012). *See Holland*, 560 U.S. 631. Pursuant to *Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012), "[i]nadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." However, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318 (citing *Miller-El v. Cockrell*, 537 U.S. 322 (2003)); *see also Trevino v. Thaler*, 133 S. Ct. 1911, 1918 (2013). If the ineffective assistance of trial counsel claim "does not have any merit or . . . is wholly without factual support," the procedural default precludes federal habeas review. *Martinez*, 132 S. Ct. at 1319.

Contrary to Petitioner's argument, the alleged ineffective assistance of Ms. Butler in filing his Petition for Writ of Certiorari does not establish cause for Petitioner's default as to Ground One or Ground Two. *See Gore v. Crews*, 720 F.3d 811, 817 (11th Cir. 2013) ("Because Gore's claim . . . does not raise an allegation of ineffective assistance of trial counsel, *Martinez* by its own terms does not, and cannot, excuse his failure to satisfy the exhaustion requirement of § 2254(b)."); *Hodges v. Colson*, 727 F.3d 517, 531 (6th Cir. 2013) ("Under *Martinez*'s unambiguous holding our previous understanding of *Coleman* in this regard is still the law—ineffective assistance of post-conviction counsel cannot supply cause for procedural default of a claim of ineffective assistance of appellate counsel."); *see also Johnson v. Warden of Broad River Corr. Inst.*, No. 12-7270, 2013 WL 856731 (4th Cir. Mar. 8, 2013) ("[B]ecause Johnson alleges only ineffective assistance of *appellate* postconviction counsel, his allegations do not constitute cause for his failure to exhaust under the limited exception in *Martinez*. Instead, his claims fall under the general *Coleman* rule that ineffective assistance of postconviction counsel cannot constitute cause for procedural default.").

**B.**    **The Merits**

Should the district judge assigned to this case conclude Petitioner's grounds for relief are not procedurally defaulted, the undersigned recommends–alternatively–granting summary judgment to Respondent on the merits. To the extent Petitioner seeks habeas relief on allegations of errors in the PCR court, he is not entitled to relief herein. *See Bryant v. Maryland*, 848 F.2d 492, 493 (4th Cir.1988) (holding "claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas corpus relief"). However, the undersigned interprets both of Petitioner's claims as claims of ineffective assistance of counsel.

1.    Ground One

As noted above, Petitioner contends trial counsel was ineffective in failing to object when the judge "enter[ed] the jury room and engag[ed] in out-of-court Ex Parte admonitions with the jury." (Dkt. No. 1-4 at 43 of 124.) He appears to assert that he was not required to show prejudice as to this claim and further states, "[T]he State 'cannot' meet its burden of showing that the court's error was harmless beyond a reasonable doubt; . . . because the petitioner, defense counsel, prosecution and court reporter were 'absent' during the ensuing out-of-court Ex Parte admonitions." (*Id*. at 44 of 124.)

The PCR court addressed Petitioner's claim that trial counsel was ineffective in failing to object "to the judge going into the jury room to tell the jury to choose a foreman." (*See* R. at 404-07, 411.) The PCR court noted Petitioner's testimony that he "recall[ed] the judge going into the jury room to tell the jury to pick a foreman during trial. He testified trial counsel did not discuss this with him and it was not fair." (R. at 405.) The PCR court noted counsel's testimony that "he did not recall the judge going into the jury room and it would have been difficult to object to the judge's actions." (R. at 407.) In rejecting this claim of ineffective assistance of counsel, the PCR court stated,

> This Court finds trial counsel was not ineffective for failing to object to the trial judge entering the jury room to tell the jury to choose a foreperson. The record reflects that prior to closing arguments the trial judge without objection from either party entered the jury room to ask the jurors to choose a jury foreperson. (Tr. 230:8-231:8.) This Court finds counsel was not deficient for failing to object to the trial judge entering the jury room to ask the jurors to choose a jury foreperson. This Court finds the Applicant has failed to carry his burden of proving that any improper

11

> communication between the court and the jury took place. This Court also finds the Applicant failed to show how he was prejudiced. This Court finds the Applicant failed to show how the judge's actions affected the outcome of his trial proceeding.

(R. at 411.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance. *Id.* at 689. "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks and citation omitted); *see also Bowie v. Branker*, 512 F.3d 112, 119 n.8 (4th Cir. 2008); *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1297–99 (4th Cir. 1992); *Roach v. Martin*, 757 F.2d 1463, 1467 (4th Cir. 1985). In order to establish the second prong of *Strickland*, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." *Id.* While *Strickland* itself is a deferential standard, when both § 2254(d) and *Strickland* apply, "review is doubly" deferential. *Harrington v. Richter*, 562 U.S. 86, 105 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

Petitioner has not shown that the state court's rejection of this claim of ineffective assistance of counsel was contrary to, or an unreasonable application of, clearly established federal law; nor has Petitioner shown the state court's adjudication resulted in an unreasonable determination of the facts. Before closing arguments, the following exchange occurred during Petitioner's trial:

> MR. KNIGHT: Your Honor, did you appoint a foreman or foreperson?

12

THE COURT: No, I have not done that yet and probably should. Here's what I normally do. I let them appoint their own foreperson. I found out that things seem to run smoother when they find somebody versus when I pick somebody.

I have been in situations where I or another Judge have picked a very introverted person who has–very difficult speaking in front of people, and therefore they get back in the jury room and get hung up on issues that if–if someone who volunteered or who felt more comfortable leading the group of people, things seem to flow smoother and faster.

So I've kind of taken the position to let them–and I should–I meant to do that when I went out this time, that would have been the best thing to do. Any objections that I go to the jury room and ask them?

MR. MATTHEWS: That sounds fine, Your Honor.

MR. KNIGHT: No, sir. That will give me an excuse to walk outside and . . .

MR. MATTHEWS: Have a cigarette.

THE COURT: All right. I will go to the jury room and . . .

MR. KNIGHT: About five minutes, Judge?

THE COURT: Okay.

(Whereupon a brief recess was had.)

(R. at 230-31.)

At the PCR hearing, Petitioner testified he recalled "something about a foreman, they didn't pick the foreman, so [the judge] questioned attorney Mat[t]hews about going inside the jury room, picking a foreman." (R. at 367.) Petitioner stated that his attorney did not explain "that situation" to him and did not ask Petitioner if he had any objection to it. (R. at 368.) When asked if he felt that was fair to him, Petitioner stated, "No, sir. I don't. I mean, I figured, you know, defendant[s] have the right to be present at all stages of the trial." (R. at 368.)

The state court concluded that Petitioner failed to establish prejudice; such a conclusion is a reasonable one. *See Harrington v. Richter*, 562 U.S. 86, 101 (2011) ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."); *see also Pope v. Mahon*, Civ. A. No. 3:10cv24, 2010 WL 5186760, at *4 (E.D. Va. Dec. 10, 2010) (no habeas relief

on claim that counsel was ineffective in failing to object to an *ex parte* communication between the judge and the jury, stating, "Pope fails to proffer evidence demonstrating that the trial judge's action improperly influenced the jury, and Pope makes an unsupported assertion about the hidden meaning behind the jury's written question. . . . If Pope's attorney had objected at the time, it seems likely that the court would have ushered the jury back into the courtroom to respond to the jury's question because the record indicates the judge offered the parties the option for that to occur. Even if the parties had sought that option, Pope cannot demonstrate that a 'reasonable probability' exists that the outcome would have been different."); *Smith v. Kerestes*, Civ. A. No. 08-0061, 2009 WL 1676136, at *3-12 (E.D. Pa. June 15, 2009), *aff'd* 414 F. App'x 509 (3d Cir. 2011) (concluding presumption of prejudice set forth in *United States v. Cronic*, 466 U.S. 648 (1984), does not apply and finding habeas relief was not warranted on claim that counsel was ineffective in failing to object to trial court's *ex parte* communication with the jury because the petitioner could not show "that he was prejudiced by trial counsel's failure to object to the trial court's *ex parte* communications with the jury"). Respondent is entitled to summary judgment as to Ground One.

    2.    Ground Two

In Ground Two, Petitioner asserts the PCR court erred in ruling that trial counsel was not ineffective for failing to object to the court's instruction on reasonable doubt. (Dkt. No. 1-4 at 77 of 124.) Petitioner states,

> Petitioner argues a "Reasonable Doubt" charge is erroneous if it could cause a reasonable juror to interpret the "Truth" based upon a degree of evidence or the lack of evidence.
> As an abstract concept, "Truth" suggests determining whose version of the events is more likely true, the State's or the defendant's; thereby, intimates a preponderance of the evidence standard.
> Such an instruction would be error when used in the explanation of the concept of proof beyond a reasonable doubt.
> There is a reasonable likelihood the jury inferred the reference at the end of the charge to "truth" rendered as it was in the context of an admonition "not to give your honest belief" thus modifying (shifting) the reasonable doubt burden of proof.

(Dkt. No. 1-4 at 80 of 124.)[3]

The PCR court addressed this claim, noting Petitioner's testimony that counsel should have objected to the reasonable doubt charge. (R. at 405-06.) The PCR court also noted counsel's testimony: "Counsel testified he did not object to the reasonable doubt charge given at trial. He testified it was the general charge given by judges at the time and that he has never been successful objecting to the instruction." (R. at 407.) In rejecting this claim of ineffective assistance of counsel, the PCR court stated,

> This Court finds counsel was not ineffective for failing to object to the Court's reasonable doubt jury instruction. The standard for review of a reasonable doubt instruction is "whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution." Todd v. State, 355 S.C. 396, 403, 585 S.E.2d 309 (2003). This Court finds the reasonable doubt instruction given by the trial court was proper and in no way violated the Applicant's due process rights. This Court finds and the record reflects the jury was instructed several times during the course of the trial that the State had the burden of proving the Applicant guilty beyond a reasonable doubt. (T. 31:11-14, 33:9-12, 268:15-18, 270:8-12, 15-21, 271:11, 272:22-273:6, 273:21-25, 283:15-18, 284:5-9.) This Court finds this allegation is wholly without merit.

(R. at 411-12.)

The state court ruled that the "reasonable doubt instruction given by the trial court was proper." (R. at 411.) If in fact the instruction was legally correct, counsel's failure to object does not warrant federal habeas relief. *See Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) ("counsel cannot

---

[3]As noted above, Petitioner points to the following portions of the charge in contending that counsel was ineffective in failing to object:

> Reasonable doubt may arise from the evidence which is in the case or the lack or absence of evidence in this case. The jury must determine whether or not reasonable doubt exists as to the guilt of this defendant.
>
> . . .
>
> It is your duty then by your joint deliberation to determine the truth of this case giving to this defendant the benefit of every reasonable doubt on each and every issue.
>
> Then–then to the facts which you determine to be true, you are to take and apply the law which has been given to you by this Court and arrive at your verdict, and your verdict should speak the truth.

(R. at 272, 289-90; *see also* Dkt. No. 1-4 at 77-78 of 124.)

be ineffective for failing to raise a meritless claim"). At the PCR hearing, when asked whether he saw

any basis to object to any of the court's reasonable doubt charges, counsel stated,

> I did, and I've argued–I've argued with Judge Buckner for years about that. I don't
> know it would have done any good. I have on many occasions objected to Judge
> Buckner's charge, and I think it was the general charge that judges were giving during
> the time, though, and that's–any of that stuff that looks like it may be burden-shifting.
> I mean, when they say things like–Judge Buckner would routinely tell juries, verdict
> is for veritas, which means truth, and this is a search for the truth; and that presumes
> that the jury has to come to a conclusion, guilty or not guilty. They can't–they can't
> default to not guilty. They have to decide what happened. And I have fought that
> battle, and I have never won it. I think there's been–I should know this. I believe
> there's been a fairly recent case that's resolved that a little bit, but that was a–that's
> a battle that I have fought for years and not ever won. Recently I've been getting
> somewhat better charges but, you know, I've never won that battle. If I didn't make
> the argument, I'm not sure what the [s]tate of the law was at that time, but I never
> liked that charge.

(R. at 382-83.) During his cross-examination, counsel testified as follows:

> Q. And you stated earlier on the State's direct examination that you don't normally
> like the jury charge on reasonable doubt given by Judge Buckner, or is it just in
> general?
>
> A. Well, Judge Buckner–I only mentioned him because that was the judge that tried
> the case, and I have tried a bunch of cases in front of him, and I know what he
> generally rules; and, you know, that particular–whoever charges, you know, a verdict
> is for veritas, means a search for truth, and you're on a search for the truth, anytime
> I hear that I don't like it. It doesn't matter who the judge is. I don't like the charge.
> I just know that with Judge Buckner I have fought that battle a lot, and I have always
> lost. Now, as far as some clouds on the horizon I don't like that and if you can get it
> reversed on that basis, please do. I don't like the charge. I think it's burden-shifting.
> If I didn't make it, and if the law during that time was that the charge was
> inadmissible, and if I didn't make it, if that's what the law was during the time, then
> I was ineffective and he should get a new trial if that was the law during that time.

(R. at 389.) Counsel acknowledged that the trial judge in Petitioner's case was Judge Cothran, not

Judge Buckner. (R. at 390.)

The state court's rejection of this claim of ineffective assistance of counsel is not contrary to,

or an unreasonable application of, clearly established federal law, nor did the state court's

adjudication result in an unreasonable determination of the facts. As explained in *Waine v. Sacchet*, 356 F.3d 510 (4th Cir. 2004),

> The Due Process Clause of the Fourteenth Amendment protects an accused "against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Thus, "[t]he beyond a reasonable doubt standard is a requirement of due process...." *Victor v. Nebraska*, 511 U.S. 1, 5, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994). While the Constitution requires that juries be instructed on the necessity that the defendant's guilt be proven beyond a reasonable doubt, it "neither prohibits trial courts from defining reasonable doubt nor requires them to do so as a matter of course." *Id*. "Indeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof." *Id*. (internal citation omitted). "Rather, taken as a whole, the instructions must correctly convey the concept of reasonable doubt to the jury." *Id*. (internal quotation marks and alteration marks omitted).

*Waine*, 356 F.3d at 515-16. The proper inquiry in reviewing a reasonable doubt instruction is whether there is a reasonable likelihood that the jury applied the reasonable doubt standard in an unconstitutional manner. *Victor v. Nebraska*, 511 U.S. 1, 6 (1994). Moreover, "[j]ury instructions must be viewed in their entirety and in context." *United States v. Muse*, 83 F.3d 672, 677 (4th Cir. 1996) (citation omitted).

In *State v. Aleksey*, 343 S.C. 20, 538 S.E.2d 248 (2000), the Supreme Court of South Carolina stated, "Jury instructions on reasonable doubt which charge the jury to 'seek the truth' are disfavored because they '[run] the risk of unconstitutionally shifting the burden of proof to a defendant.'" *Aleksey*, 343 S.C. at 26-27, 538 S.E.2d at 251 (quoting *State v. Needs*, 333 S.C. 134, 155, 508 S.E.2d 857, 867-68 (1998)). In *Needs*, the Supreme Court of South Carolina concluded that even though the "trial judge's circumstantial evidence charge was erroneous because it instructed jurors to seek a reasonable explanation other than the guilt of the accused," "it was harmless error beyond a reasonable doubt because the trial judge instructed jurors twenty-six other times throughout his charge that the State has the burden of proving a defendant guilty beyond a reasonable doubt." *Needs*,

333 S.C. at 154, 508 S.E.2d at 867 (citations omitted).[4] In February of 2016, the Court of Appeals of South Carolina addressed the appellant's argument that "the trial court erred in instructing the jury that the trial was 'a search for the truth in an effort to make sure that justice is done.'" *State v. Deleston*, No. 2016-UP-055, 2016 WL 526592, at *1 (S.C. Ct. App. Feb. 10, 2016). The court affirmed pursuant to Rule 220(b) of the South Carolina Appellate Court Rules and the following authorities:

> As to whether the trial court erred in stating the trial was "a search for the truth in an effort to make sure that justice is done": *State v. Aleksey*, 343 S.C. 20, 26–27, 538 S.E.2d 248, 251 (2000) ("Jury instructions on reasonable doubt which charge the jury to 'seek the truth' are disfavored because they '[run] the risk of unconstitutionally shifting the burden of proof to a defendant.'" (quoting *State v. Needs*, 333 S.C. 134, 155, 508 S.E.2d 857, 867–68 (1998) (alteration provided in *Aleksey* ))); *id*. at 27, 538 S.E.2d at 251 ("However, jury instructions should be considered as a whole, and if as a whole they are free from error, any isolated portions which may be misleading do not constitute reversible error."); *id.* ("The standard for review of an ambiguous [or improper] jury instruction is whether there is a reasonable likelihood that the jury applied the challenged instruction in a way that violates the Constitution.").

*Deleston*, 2016 WL 526592, at *2.

In the case *sub judice*, despite the trial court's reference to "truth," as noted by the PCR court, the trial court instructed the jury numerous times that the State had the burden of proving Petitioner guilty beyond a reasonable doubt. (R. at 411-12, 26, 270-74.) Accordingly, the state court's application of *Strickland* was not unreasonable. *See Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."); *Davis v. McCall*, Civ. A. No. 4:11-cv-3263-MGL-TER, 2013 WL 1282130, at *19 (D.S.C. Feb. 1, 2013), adopted at 2013 WL 1282128 (D.S.C. Mar. 25, 2013), *adopted in relevant part at* 2013 WL 1282128 (Mar. 25, 2013) ("Because there was no error in the charge, trial counsel was not ineffective

---

[4]The trial judge in *Needs* also instructed the jury that

> [a] reasonable doubt is a doubt which makes an honest, sincere, conscientious juror *in search of the truth* in the case hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and to act upon it in the most important of his or her own affairs.

*Needs*, 333 S.C. at 152, 508 S.E.2d at 866 (emphasis in original).

for failing to raise the 'correct' objection and Petitioner was not prejudiced by trial counsel's objection."); *see also Lopez v. Thurmer*, 594 F.3d 584, 587 (7th Cir. 2010) ("Because we leave undisturbed the state appellate court's holding that Lopez was not entitled to a felony-murder instruction, its additional ruling that counsel's performance was constitutionally adequate under *Strickland* was reasonable. It is not well outside the boundaries of permissible differences of opinion to conclude that counsel's performance is constitutionally adequate when he fails to request an instruction that, as a matter of state law, the defendant is not entitled to in the first place." (internal quotation marks and citations omitted)). Respondent is entitled to summary judgment as to Ground Two.

## CONCLUSION

It is RECOMMENDED, for the foregoing reasons, that Respondent's Motion for Summary Judgment (Dkt. No. 14) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is further RECOMMENDED that a certificate of appealability be denied.[5]

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

December 6, 2016
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

_____

[5]Title 28, Section 2253 provides in relevant part,
(c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from–
(A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
(B) the final order in a proceeding under section 2255.
28 U.S.C. § 2253. A prisoner satisfies this standard by demonstrating that reasonable jurists would find this court's assessment of his constitutional claims debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. *See Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In the case *sub judice*, the legal standard for a certificate of appealability has not been met. The undersigned therefore recommends that a certificate of appealability be denied.

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).